NATIONAL LIFE & ACCIDENT INS. CO. *v.* DEMPSTER, COM-
MISSIONER OF FINANCE AND TAXATION, ET AL.

(*Nashville,* December Term, 1934.)

Opinion filed February 23, 1935.

Tyne, Peebles, Henry & Tyne, of Nashville, for appellant.

Roy H. Beeler, Attorney-General, and Edwin F. Hunt, Assistant Attorney-General, for appellees.

P. M. Estes, of Nashville, *amicus curiae*.

Mr. Justice DeHaven delivered the opinion of the Court.

The Public Acts of the General Assembly of the state of Tennessee for the year 1923, chapter 21, as amended by chapter 44 of the Public Acts for the year 1927, imposes an excise tax upon certain corporations and joint-stock associations. These acts are brought forward in section 1316 et seq., of the Code of Tennessee. The sections relevant to this suit are as follows:

"1316. *Tax imposed.*—All corporations and joint-stock associations organized under the laws of the State of Tennessee, other than those organized for general welfare and not for profit, and all corporations and joint-

stock associations organized under the laws of any other state or country for profit and doing business in Tennessee, shall, without exception, pay to the state comptroller annually an excise tax, in addition to all other taxes, equal to three per cent of the net earnings for their preceding fiscal year of such corporations and joint-stock associations, arising from business done wholly within the state, excluding earnings arising from interstate commerce. Tennessee insurance companies shall pay on net earnings proportioned to premiums on policies on persons and property in this state."

"1322. *Supervision and collection under department of finance and taxation; forms for reports.*—The supervision and collection of the tax imposed shall be under the direction of the department of finance and taxation, and such department shall have authority and power to prescribe forms upon which corporations and joint-stock associations, liable for the tax imposed, shall make reports of such facts and information as will enable the commissioner of said department to ascertain the correctness of the amount reported and paid by such corporations or joint-stock associations."

"1323. *Judgment and opinion of commissioner is conclusive, when; subject to revision in the courts, when.*—In all matters requiring the exercise of judgment and discretion as to what may or may not be net income, the judgment and opinion of said commissioner shall be final and conclusive, and there shall be no review of his action; except the constitutional right of redress in the courts under the laws."

It appears from the original bill herein that appellant made its report to the commissioner of finance and taxa-

tion of its net earnings for the year 1931, upon the forms for returns as furnished by the then commissioner, specifically providing for a deduction of interest on "tax free" bonds in fixing the income upon which the tax in question was to be computed. This report showed the total amount of "net earnings," credited to Tennessee business, exclusive of interest on "tax free" bonds, to be $70,342.66. Appellant paid the tax on this amount. Appellant also collected during the year 1931 interest on certain "tax free" bonds owned by it. The proportionate part of said interest credited to Tennessee business amounted to $62,775.39. The commissioner demanded that appellant include this interest in its "net earnings" for the year 1931, and that it pay excise tax thereon. Appellant paid, under protest, the additional tax required of it by the commissioner, amounting to $1,883.26, plus interest and penalty. The purpose of the bill is to recover this payment from appellees.

It appears that appellant had, since the statute first became effective, paid to the comptroller 3 per cent of its net earnings for each fiscal year arising from business done wholly within the state, there being excluded therefrom, however, the earnings of appellant collected by it on bonds of the United States, the state of Tennessee, and the political subdivisions thereof, owned by it, which state, county, and municipal bonds, and interest thereon, were by the acts authorizing their issuance specifically exempted from taxation, and which bonds were purchased by appellant, under the contract of sale and purchase, as such tax free securities. The exclusion of interest on such bonds by appellant from its net earnings, in computing the amount upon which to pay its excise

tax, was specifically authorized by the then commissioner of finance and taxation at the time the statute imposing said excise tax became effective, and had been authorized by each and every succeeding commissioner down to and including the immediate predecessor of the commissioner in office when the bill herein was filed, except during the last few months of his tenure of office, and that the forms furnished for such periods specifically provided for a deduction of interest on ''tax free'' bonds in arriving at the income upon which said tax was to be computed.

After setting forth the foregoing facts, appellant asserts in its bill that the assessment and collection on the part of appellees from it of said additional tax, computed on its earnings consisting of interest on ''tax free'' bonds, together with interest and penalty, was illegal, erroneous, and without authority in law for the reasons:

(1) That the bonds upon which said interest was collected, and upon which interest said tax was computed, were and are tax free, and the income therefrom was and is tax free and could not lawfully be subjected to said excise tax.

(2) That it was the intent of the Legislature in the passage of said statute imposing said tax measured by said income that there should not be included upon which said tax was computed any income consisting of interest collected on ''tax free'' bonds and tax free securities.

(3) That ever since said statute went into effect in 1923, it has been construed by the various commissioners of finance and taxation to mean that the income by which said tax was measured should not include interest on ''tax free'' bonds, and such construction had been uniformly followed by every commissioner down to and including the defendant's immediate predecessor in office,

and upon the basis of such construction appellant had purchased said bonds and thereby property rights had become fixed, which rights would be seriously impaired under the construction now insisted on by defendant.

(4) That the Legislature of Tennessee had knowledge of the construction of said statute as placed thereon by the various commissioners, and by its failure to change or modify said statute so as to provide for the inclusion of interest collected on tax free bonds in net earnings for taxation purposes, it had approved and ratified said construction as the true and legislative intent.

(5) That the attempt by defendant to now construe said statute to impose a tax measured by income from ''tax free'' bonds was, in effect, the enactment of a new law which impaired the obligations of the contracts between appellant and the state and the political subdivisions thereof whose bonds complainant owned, and appellant specially pleads and relies on section 10 of article 1 of the Federal Constitution, and section 20 of article 1 of the Constitution of the state of Tennessee, to protect it against laws which would impair the obligations of contracts.

A demurrer to the original bill was interposed by the appellees, and upon hearing was sustained and the bill dismissed. To the action of the chancellor in sustaining the demurrer and dismissing the bill, appellant excepted and appealed to this court. Eleven assignments of error are made. These assignments are, in effect, that the chancellor erred in holding against appellant on the five objections to the validity of the tax set up in the bill, hereinbefore set out, and, in addition, that the court erred in failing to hold that appellant's being required to include interest from United States bonds, in the income by

which the tax was measured, imposed a burden on the right of the federal government to borrow money, and was, therefore, in violation of article 1, sec. 8, cl. 2, of the Federal Constitution, authorizing the government "to borrow Money on the credit of the United States."

The sole question involved in this suit is whether or not interest collected by the appellant on "tax free bonds," during the year 1931, was properly included as a part of its "net earnings" upon which the state excise tax was competent.

■ The language of the statute, section 1316 of the Code, is comprehensive and inclusive. The tax is levied upon "net earnings" of corporations and joint-stock associations. The phrase "net earnings" is not defined in the statute. In the case of *Bank of Commerce & Trust Co.* v. *Senter*, 149 Tenn., 569, 596, 260 S. W., 144, 151, the constitutionality of the excise tax law was before this court for determination. In sustaining the constitutionality of the statute, the court said: "The term 'net earnings,' not being defined by the act, must be given its usual and ordinary meaning of what is left of earnings after deducting necessary and legitimate items of expense incident to the corporate business."

The term "net earnings" is unambiguous in its meaning. We must conclude the Legislature intended to convey the usual and ordinary meaning of the phrase used without any forced or subtle construction.

■ ■ Undoubtedly, the interest received by appellant on tax free bonds constituted a part of its net earnings. This is not denied. The contention is that the portion of appellant's net earnings arising from tax free bonds must be excluded in calculating the amount of ex-

cise tax due by it. The statute itself authorizes no such exclusion. The only earnings excluded by the terms of the statute are those arising from interstate commerce. The enumeration of exceptions to a general statute excludes by necessary implication all other exceptions. *Evans* v. *McCabe,* 164 Tenn., 672, 52 S. W. (2d), 159, 617; *Turner* v. *Eslick,* 146 Tenn., 236, 240 S. W., 786; Lewis' Sutherland Statutory Construction, sec. 494.

This court, in a memorandum opinion filed in the case of *Bank of Commerce & Trust Co.* v. *Senter,* subsequent to the opinion for publication reported in 149 Tenn., 569, 260 S. W., 144, said: ''For the privilege of doing business in Tennessee as a corporation, a tax was levied, measured by net earnings. The phrase net earnings from business done wholly within the State is definite of the measure of the tax, measuring it by earnings of the corporation upon its corporate business in the State, and excluding by the last phrase earnings from interstate commerce which cannot be burdened. The express exception of earnings from interstate commerce excludes all others. Where a general rule has been established by a statute, with exceptions, the court will not curtail the former nor add to the latter by implication.''

It seems also that the Legislature intended by the act that all net earnings of a corporation, from whatsoever source derived, shall constitute the measure of the tax, except that earnings from interstate commerce shall be excluded.

The tax imposed by the act is a privilege tax and not a direct tax on property. *Bank of Commerce & Trust Co.* v. *Senter,* 149 Tenn., 569, 260 S. W., 144. The rule seems to be settled that an excise tax statute is not

unconstitutional solely because there is included in the income of the taxpayer, by which the tax is measured, interest from tax free bonds, when such inclusion is incidental and fortuitous. *Flint* v. *Stone Tracy Co.,* 220 U. S., 107, 31 S. Ct., 342, 55 L. Ed., 389, Ann. Cas., 1912B, 1312; *Pacific Co.* v. *Johnson,* 285 U. S., 480, 52 S. Ct., 424, 76 L. Ed., 893; *Educational Films Corp.* v. *Ward,* 282 U. S., 379, 51 S. Ct., 170, 75 L. Ed., 400, 71 A. L. R., 1226; *Society for Savings* v. *Coite,* 6 Wall., 594, 18 L. Ed., 897; *Provident Inst. for Savings* v. *Massachusetts,* 6 Wall., 611, 632, 18 L. Ed., 913; *Home Ins. Co.* v. *New York,* 134 U. S., 594, 10 S. Ct., 593, 33 L. Ed., 1025.

The legislation here under consideration discloses only that the state of Tennessee has sought, in good faith, to conform its scheme of taxation of corporations to a permitted method. By the act in question it has adopted a form of privilege tax on corporations measured by their net income, without any form of discrimination as to the sources of the income included in the measure, differing in this respect in no material way from a similar tax upheld in *Flint* v. *Stone Tracy Co.,* 220 U. S., 107, 31 S. Ct., 342, 55 L. Ed., 389, Ann. Cas., 1912B, 1312, and in *Educational Films Corp.* v. *Ward,* 282 U. S., 379, 51 S. Ct., 170, 75 L. Ed., 400, 71 A. L. R., 1226.

This court, in *General Securities Co.* v. *Williams,* 161 Tenn., 50, 54, 29 S. W. (2d), 662, 663, said: ''Chapter 21 of the Acts of 1923 was not aimed at the income from nontaxable securities, and any resulting burden thereby was fortuitous and incidental.''

The immunity from taxation on which appellant relies is granted by sections 1086-1088 of the Code of Tennessee. Section 1086 provides as follows: ''Whenever the State

of Tennessee shall issue any bonds upon her faith and credit for any public purpose, neither the principal nor the interest of said bonds shall be taxed by this state or by any county or municipality of this state, and it shall be so stated on the face of said bonds when issued.''

Sections 1087 and 1088 are substantially the same, with the exception that section 1087 refers to county bonds and section 1088 refers to municipal bonds.

Under the above sections of the Code, the bonds of the state of Tennessee, and of any county or municipality thereof, held by appellant, are exempt from taxation as to both principal and interest. Likewise, the bonds of the United States held by appellant are exempt from taxation by the state. *Weston* v. *Charleston*, 2 Pet., 449, 7 L. Ed., 481, 488; *Macallen Co.* v. *Massachusetts*, 279 U. S., 620, 49 S. Ct., 432, 73 L. Ed., 874, 65 A. L. R., 866. Having guaranteed to the purchasers of these bonds immunity from taxation of the principal and interest, the state of Tennessee is without power subsequently to destroy the immunity and to tax the bonds or interest directly or indirectly. The act here in question, however, does not tax either the principal or interest of any bonds of the state of Tennessee, or of any political subdivision thereof, or of the United States.

In *Pacific Co.* v. *Johnson*, 285 U. S., 480, 489, 490, 52 S. Ct., 424, 425, 76 L. Ed., 893, the court said:

''If, as appellant argues, the exemption from taxation of the bonds is contractual and extends to the income derived from them, the question still remains whether the immunity is broad enough to secure freedom from taxation of a corporate franchise, to the extent that it is measured by tax exempt income. . . .

"The rule that a tax upon a franchise, measured by net income, including that from tax immune property, is not an infringement of the immunity, was re-examined and affirmed in *Flint* v. *Stone Tracy Co.*, 220 U. S., 107, 31 S. Ct., 342, 55 L. Ed., 389, Ann. Cas., 1912B, 1312, which was accepted as authority in *Macallen Co.* v. *Massachusetts*, 279 U. S., 620, 49 S. Ct., 432, 436, 73 L. Ed., 874 (65 A. L. R., 866), and followed in *Educational Films Corp.* v. *Ward*, 282 U. S., 379, 51 S. Ct., 170, 75 L. Ed., 400 (71 A. L. R., 1226).

"This distinction, so often and consistently reaffirmed, is but a recognition that the franchise, the privilege of doing business in corporate form, which is a legitimate subject of taxation, does not cease to be such because it is exercised in the acquisition and enjoyment of nontaxables. The distinction is one of substance, not of form, and has been so recently discussed in *Educational Films Corp.* v. *Ward*, that it need not be elaborated here. It suffices to say that the tax immunity extended to property *qua* property does not embrace a special privilege, the corporate franchise, otherwise taxable, merely because the value of the corporate property or net income is included in an equable measure of the enjoyment of the privilege. The owner may enjoy his exempt property free of tax, but if he asks and receives from the state the benefit of a taxable privilege as the implement of that enjoyment, he must bear the burden of the tax which the state exacts as its price."

The exemption from taxation granted on the bonds of the state of Tennessee, and of its political subdivisions, under Code, sections 1086-1088, does not exempt appellant corporation from the payment of the privilege

tax exacted by the state for the privilege of doing business in Tennessee, which tax equals in amount 3 per cent of its net earnings for the preceding fiscal year, excluding earnings arising from interstate commerce.

■ ■ It is earnestly insisted by appellant that the commissioner of finance and taxation, under section 1323 of the Code, is vested with the judgment and discretion of determining what may or may not be ''net income,'' and that for nine years from the time the act became operative the several commissioners in office during that period ruled and held that the interest on tax free securities should be excluded from appellant's ''net income'' in computing the tax. That upon the basis of such construction appellant had purchased said bonds and thereby property interests had become fixed, which rights would be seriously impaired under the construction now insisted on by appellees. Under section 1316 of the Code, the legislative mandate is that all of the net earnings, from whatsoever source derived, shall constitute the measure of the tax, excluding only earnings arising from interstate commerce. No judgment or discretion is given by the act to the commissioner to exclude any particular type or character of net earnings from consideration in measuring the tax. The power of determining the measure of the tax is a legislative function, not delegated to the commissioner. It is only matters ''requiring'' the exercise of judgment and discretion ''as to what may or may not be net income'' that are left to the judgment and opinion of the commissioner. Ascertaining ''net income'' of a corporation often involves processes of calculation and other details. Questions may arise as to whether the items of expense

claimed are legitimate or not. It is to such administrative matters as these that the exercise of the judgment and discretion of the commissioner is permitted. His finding as an assessment is final, and no administrative board is authorized to review or set aside his action.

In *Bank of Commerce & Trust Co.* v. *Senter,* 149 Tenn., 569, 592, 593, 260 S. W., 144, 150, one of the grounds of attack on this act was the very argument now made by appellant. The court said:

"Another assault upon the validity of the act is that it confers power upon the commissioner of finance and taxation to define net earnings as a means of finding the measure of the tax, and therefore delegates to him legislative powers in violation of the Constitution. The power of determining the measure of the tax is a legislative function. In adopting the measure the Legislature could have given the term 'net earnings' a statutory definition, but since that was not done the phrase must be given its usual and ordinary meaning, without any forced or subtle construction.

"The determination by the state's fiscal agents, of the net earnings of corporations involves, for the most part, processes of calculation, involving detail which must of necessity be left to the administrative officers who in the discharge of their duties would be required to exercise some measure of discretion to obtain efficiency."

*General Securities Co.* v. *Williams,* 161 Tenn., 50, 29 S. W. (2d), 662, is not in conflict with the above case, nor does it support the contention of appellant. In that case the insistence was that the entire excise tax statute was unconstitutional because there was no express ex-

emption of that part of net earnings derived from interest on United States bonds. The court refused a declaration under the Declaratory Judgments Act (Code 1932, Sec. 8835 et seq.), because the record did not show that the fiscal officers of the state, in fact, had included such tax exempt securities.

It is insisted that the construction placed upon the act, as exempting tax free securities, by the several commissioners, for nine years, is entitled to great weight and should not be disturbed unless clearly erroneous. This is a correct statement if the language of the taxing statute be ambiguous. In *Price-Bass Co. v. McCabe*, 161 Tenn., 67, 29 S. W. (2d), 249, this court construed a taxing statute as requiring the payment of greater sums than the department of finance and taxation had under its prior rulings required from taxpayers. It was held that the fact that the department had given an unambiguous statute other than the correct interpretation was not controlling. So, in the instant case, the statute is free of ambiguity, and the erroneous construction placed thereon by certain of the commissioners is not controlling. *Mengel Box Co. v. Stevens*, 141 Tenn., 373, 210 S. W., 635.

It is insisted that the ruling by the defendant Dempster to the effect that interest collected on tax free bonds should be included as part of complainant's net earnings was such a change in the taxing policy of the state as to render such construction void and unenforceable. It is sufficient to say that the unauthorized and erroneous acts of former commissioners in excluding interest on tax free bonds as a part of complainant's net earnings by which to measure the tax cannot be held to bind the

state. The policy of the state is reflected in the act, and that policy has not been changed. Appellant can have no advantage from the circumstance that several of the commissioners, after the act became effective, erroneously permitted it to withhold from its net earnings, reported as a measure of its tax, the interest on tax exempt bonds. The situation is in no sense parallel with that presented in *Macallen Co.* v. *Massachusetts,* 279 U. S., 620, 49 S. Ct. 432, 73 L. Ed., 874, 65 A. L. R., 866.

A careful consideration of all the questions raised convinces us that the decree of the chancellor must be affirmed.