**COOK EXPORT CORPORATION,**
Appellant,

v.

**John K. KING, Commissioner of
Revenue, Appellee.**

Supreme Court of Tennessee.

June 13, 1983.

Frank L. Watson, Jr., William E. Frulla, Louis Jay Miller, Waring, Cox, Sklar, Allen, Chafetz & Watson, Memphis, for appellant.

Jim G. Creecy, Deputy Atty. Gen., William M. Leech, Jr., Atty. Gen. and Reporter, Nashville, for appellee.

## OPINION

COOPER, Justice.

This action was brought by the appellant to recover corporate franchise and excise taxes, interest and penalties paid by it under protest for the years 1972 and 1973. Appellant asserts that it was improperly assessed the taxes on income attributable to

its parent corporation, that the sums assessed do not constitute "net earnings" within the meaning of the excise tax statute, that the excise and franchise tax schemes suffer numerous constitutional infirmities as applied to it, and that any tax due the state should be determined according to the statutory apportionment formula.

To encourage foreign trade, Congress enacted legislation in 1971 providing favorable tax treatment to qualifying Domestic International Sales Corporations (DISCs). IRC §§ 991–997. Cook Export Corporation is such a DISC. Cook Export's parent company, Cook Industries, Inc., is engaged in numerous foreign and domestic enterprises, including the export of grain and other commodities. Cook Export, a Delaware corporation, was created as a DISC in 1972 to enable Cook Industries to take advantage of the federal tax provisions. Cook Industries is the sole stockholder in its subsidiary and the corporate officials of the parent serve as the officers and directors of the appellant. The principal office and place of business of both entities is in Memphis, Tennessee.

In order to take advantage of the federal tax provisions Cook transferred the maximum permissible amount of its "qualified export receipts" as "commissions" to appellant for the tax years 1972 and 1973. Appellant insists that these commissions were not subject to our state franchise and excise taxes. We have previously determined otherwise.

In the prior appeal in this case we reversed the chancellor's determination that appellant was not doing business in Tennessee and was thus not subject to franchise and excise taxation. *Cook Export Corp. v. King,* 617 S.W.2d 879 (Tenn.1981). The taxes are imposed on "[a]ll corporations . . . organized for profit . . . and doing business in Tennessee." T.C.A. §§ 67–2702, –2902 (1976). We held that Cook Export is a corporation within the meaning of the tax statutes, having a separate corporate identity and existence from its parent. We also held that Cook Export's activities in Tennessee, which included the making of substantial contracts involving large sums of money, the keeping of books and records incident to the contracts, the payment of corporate dividends, the purchase and handling of accounts, the management of corporate affairs, and banking activities, constituted "doing business" within the purview of the statutes. We remanded the case for development of the remaining issues, including any entitlement of Cook Export to apportionment.

On remand the chancellor held that the commissions were includable in appellant's net earnings and that Cook Export failed to prove that it was entitled to apportion its income. He found appellant's constitutional challenges to be without merit and affirmed the assessment at the rate of 100%. The penalties assessed, however, were ordered returned to appellant with interest since the law was unsettled at the time of the deficiency. We agree with the lower court's resolution of these issues and affirm its decision.

■ Appellant first insists it is not liable for any taxes on commissions paid to it by Cook Industries, that tax liability on such commissions, if any, would be that of the parent corporation. As heretofore noted, we have held that Cook Export is liable for payment of franchise and excise taxes to the State of Tennessee, *Cook Export, supra.*[1] We see no basis for reversing that holding. The argument that monies transferred to Cook Export by the parent corporation are not "net earnings" of Cook Export since they were derived solely from the parent's employment of labor and capital in our opinion is without merit. For the purposes of computing taxes due the State of Tennessee by corporations, "net earnings"

---

1. *See also, Allenberg Exports, Inc. v. Woods,* 640 S.W.2d 546 (Tenn.1982), wherein a DISC was held to be liable for payment of excise and franchise taxes on receipts from its parent corporation.

is defined as "federal taxable income before the operating loss deduction and special deduction provided for in §§ 241 through 247 and 249 through 250 of the Internal Revenue Code," subject to the adjustments specified in the statute. T.C.A. § 67–2704 (1976). *See Woods Lumber Co. v. MacFarland,* 209 Tenn. 667, 674, 355 S.W.2d 448, 451 (1962). Net earnings includes all earnings " 'without regard to the source from which they were derived.' " *MacFarland* 355 S.W.2d at 451. The statute draws no distinction between "earnings from the sale of land, stock, bonds, income on tax exempt securities, or sale of other assets." *MacFarland* 355 S.W.2d at 453. The tangible realization of money or its equivalent in property or the discharge of a legal obligation results in earnings subject to excise taxation. *Genesco, Inc., v. Butler,* 214 Tenn. 87, 91, 377 S.W.2d 933, 935 (Tenn.1964). Net earnings thus includes more than earned income. The commissions paid Cook Export by the parent corporation resulted in appellant's tangible realization of monetary earnings to be included in its net earnings. *See FMC Corporation v. Woods,* 618 S.W.2d 307, 308 (Tenn.1981).

■ Appellant next argues that our franchise and excise taxation schemes suffer numerous constitutional infirmities. We have carefully considered each of Cook Export's constitutional challenges and found them to be without merit.

During the tax years at issue here Cook Industries was assessed taxes on an apportioned basis by several states. Some of these states included the dividends distributed to Cook by the appellant in determining Cook's tax basis while other states included the undistributed commission amounts held by Cook Export in addition to the amounts actually received by Cook from appellant. From this appellant concludes that Tennessee cannot constitutionally tax all of Cook Export's earnings.

Appellant's argument overlooks the fact that we have determined that it is a separate and distinct taxable entity from its parent. *Cook Export, supra.* Appellant also overlooks the fact that Cook Industries was permitted to exclude all of the distributed and undistributed funds taxed to the appellant by our state in determining its tax basis.

The record indicates that virtually all of the activities and transactions in which appellant engaged during the tax years in question took place in Tennessee. Cook Export was not subjected to taxation by any other state for the years 1972 and 1973.

Under these facts we cannot but conclude that our taxation of appellant imposed no impermissible burden on interstate commerce. *See McGoldrick v. Berwind-White Coal Mining Co.,* 309 U.S. 33, 60 S.Ct. 388, 84 L.Ed. 565 (1940); *Western Livestock v. Bureau of Revenue,* 303 U.S. 250, 58 S.Ct. 546, 82 L.Ed. 823 (1938). We do not view the apportioned taxation of Cook Industries by the various states as duplicitous of our own taxation of Cook Export. We also think that this taxpayer had the required minimal connection with our state, *see National Bellas Hess, Inc. v. Department of Revenue,* 386 U.S. 753, 87 S.Ct. 1389, 18 L.Ed.2d 505 (1967), and that the due process requirement that income attributed to the taxing state be rationally related to values connected with that state, *see Norfolk and Western Ry. Co. v. State Tax Comm'n,* 390 U.S. 317, 88 S.Ct. 995, 19 L.Ed.2d 1201 (1968), was plainly satisfied here. While Cook Industries was involved in the import-export trade, appellant was not. We are concerned here with the character of the commissions as they came to Cook Export. We do not perceive our taxation of appellant's commission earnings as an impost or duty on imports or exports prohibited by the federal constitution. See *Dept. of Revenue of Washington v. Ass'n of Washington Stevedoring Companies,* 435 U.S. 734, 98 S.Ct. 1388, 55 L.Ed.2d 682 (1978); *Michelin Tire Corp. v. Wages,* 423 U.S. 276, 96 S.Ct. 535, 46 L.Ed.2d 495 (1976).

■ Appellant insists that it was denied the equal protection of the laws by our

disparate tax treatment of Cook Industries and Cook Export. We can not agree. That portion of Cook Industries' profit that was retained by it, rather than being transferred to Cook Export pursuant to the tax deferment scheme, was properly apportioned since Cook Industries engaged in foreign commerce and was subject to taxation elsewhere. A taxpayer has the burden of proving entitlement to apportionment. *Roane Hosiery, Inc., v. King,* 214 Tenn. 441, 381 S.W.2d 265, 267 (Tenn.1964). To be entitled to apportionment the taxpayer must prove that it had a substantial number of contacts with other states and a " 'very strong showing,' " is required absent proof that the taxpayer was domesticated and paid taxes elsewhere. *H.D. Lessors, Inc. v. Tidwell,* 544 S.W.2d 611, 613 (Tenn. 1976). We agree with the chancellor that Cook Export failed to make the requisite showing to entitle it to apportionment.

■ Appellant also contends that the federal DISC provisions preempt our state tax provisions. We are not convinced. As we said in the prior appeal of this case, "[t]he fact that parties may conduct business transactions in such a way as to take advantage of federal taxation does not necessarily entitle them to exemption from state taxation under other and different statutes." *Cook Exports,* at 881. The federal statutes contain no express preemption provision and such an intent is not evident from the legislation itself. The federal and state statutes are not directly repugnant or irreconcilable so that they may not be simultaneously enforced. Nor do we think that our tax statutes impede the congressional purpose in enacting the federal legislation. *See Ray v. Atlantic Richfield Co.,* 435 U.S. 151, 98 S.Ct. 988, 55 L.Ed.2d 179 (1978); *City of Burbank v. Lockheed Air Terminal, Inc.,* 411 U.S. 624, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973); *Florida Lime and Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963). *See also, Westinghouse Electric Corp. v. Tully,* 55 N.Y.2d 364, 449 N.Y.S.2d 677, 434 N.E.2d 1044 (N.Y.1982).

■ Finally, appellant urges that the taxes imposed on it were in reality income taxes prohibited by our state constitution. The constitutionality of our excise and franchise taxes is well established. Our excise tax is not an income tax but a tax on the privilege of doing business in corporate form in our state. *MacFarland,* 355 S.W.2d at 451; *Roane Hosiery,* 381 S.W.2d at 267. The taxes are levied to compensate the state for the protection of the taxpayer's local activities and as compensation for the benefits received from doing business in Tennessee. *Mid-Valley Pipeline Co. v. King,* 221 Tenn. 724, 731, 431 S.W.2d 277, 280 (Tenn.1968).

The judgment of the chancellor is affirmed. Costs incident to this appeal will be taxed to the appellant.

FONES, C.J., and HARBISON, J., concur.

BROCK and DROWOTA, JJ., concur in part and dissent in part.

DROWOTA and BROCK, Justices concurring in part and dissenting in part.

We adhere to our dissenting opinion in *Cook Export Corporation v. King,* 617 S.W.2d 879, 882 (Tenn.1981), in which we stated that "a corporation is not subject to excise and franchise taxation simply because it is organized for profit. The corporation must also be 'doing business in Tennessee' during the year of the assessment."

We held that Cook Export's activities were insufficient in quantity and significance to constitute "doing business in Tennessee." We further held that "the Commissioner failed to tax the proper entity. The Commissioner should have attributed to the parent, Cook Industries, the earnings and assets of its subsidiary, Cook Export." We continue to believe that the Commissioner should have attributed back to Cook Industries that portion of its export profits transferred to Cook Export.

We concur in all other respects with the majority opinion on those issues that are

not inconsistent with our original dissenting opinion.